**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES BROWN,** | : | **Civil No.  3:16-CV-1123** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN COLVIN,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

This is an unusual Social Security appeal. The claimant, James Brown, apparently ceased working a nearly a decade ago in 2008. Consequently, Brown's date last insured, which defined the limits of his eligibility for Social Security benefits, was December 31, 2011. In this case, Brown claimed to have been disabled due to gout and cervical and lumbar spine problems, and alleged that the onset of his disability was July of 2011.  Thus, the instant disability claim entails a consideration of Brown's physical condition during a narrow window of time, the six month period from July through December 2011.

As to this specific time frame, Brown produced very little evidence of any medical impairments. Quite the contrary, Brown's evidence of disability almost

entirely related to medical complications which he experienced years after his Social Security disability eligibility expired. In fact, at the Administrative Law Judge (ALJ) hearing conducted in this case, Brown testified under oath that he was relatively able-bodied in 2011, and was able to engage in strenuous lawn maintenance and walk considerable distances with his grandchildren at that time. Thus, Brown's sworn testimony seemed to undermine his claim of disability during the Summer and Fall of 2011.

Presented with this paucity of proof, the Administrative Law Judge concluded at Step 2 of the five-step sequential analysis which applies to Social Security disability cases that Brown had not carried his burden of proof that he suffered from medically determinable and severe impairments in the Autumn of 2011; that is, "any impairment or combination of impairments which significantly limits [Brown's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920 (c). Having made this determination, the ALJ denied Brown's application at Step 2, and did not proceed further through this 5-step sequential analysis.

This appeal followed, but followed in a fashion which did not address the ALJ's actual decision. Thus, on appeal Brown does not question, dispute or even discuss the ALJ's Step 2 analysis, the sole basis for the ALJ's decision. Instead, paradoxically, Brown argues matters not addressed or decided by the ALJ devoting

his brief entirely to an assessment of Brown's claims at Steps 3 and 5, analytical steps that were never reached by the ALJ. On these unusual facts, for the reasons set forth below, the decision of the Commissioner will be affirmed.

## II.    <u>Statement of Facts and of the Case</u>

On March 15, 2013, James Brown applied for disability benefits under Title II of the Social Security Act. (Tr. 13.) In his application for benefits Brown initially alleged an onset of disability in January of 2008, a date which corresponded with the last time that Brown engaged in any reported work. (<u>Id</u>.) Brown subsequently amended this alleged date of onset to July 8, 2011. (<u>Id</u>.)

Because Brown had not reported work at all during the five years prior to his March 2013 disability application, Brown's date last insured for purposes of Social Security disability eligibility was determined to be December 31, 2011. (Tr. 15.) Thus, Brown's disability application involved an assessment of the disabling effects of any physical impairments during a narrow, specific and limited period of time—July 8, 2011 through December 31, 2011.

Brown's disability application claimed that the plaintiff was wholly disabled during this time primarily due to degenerative disorders of the cervical and lumbar spine, along with gout. (<u>Id</u>.)  However, with respect to these presenting medical conditions, the evidence provided by Brown relating to the severity of these

3

conditions during his six month period of eligibility in the Summer and Fall of 2011 was both sparse and largely contradicted his claim of disability at that time. For example, at the ALJ hearing conducted in this case in July of 2015 Brown appeared and testified that in 2011 he could "still mow my yard all in one shot" and perform "some weed whacking." (Tr. 32.) Brown also stated under oath that in 2011 he was "able to walk my grandsons up over the hill", (Tr. 33), walks that Brown undertook "without much of a problem" and walks that he estimated took "probably 30 minutes."(Id.) Thus, Brown described himself as physically active and largely able-bodied in 2011, the relevant time period for this disability determination.

Moreover, in work activity and disability reports which Brown submitted to Social Security the plaintiff made it clear that the actual onset of his disabling back pain occurred years after his date late insured in December 2011. Thus, Brown and his wife both reported that these conditions became disabling in September of 2013, long after his Social Security eligibility had expired, (Tr. 178-79), and indicated that he had not even begun to regularly seek treatment for these conditions until 2012. (Tr. 172-185.) Thus, Brown's own reports indicated that he was capable of performing significant physical activity in 2011, but that his physical capabilities then declined over the following two years.

The sporadic medical records that Brown produced also provided scant support for Brown's claims that he was wholly disabled due to this gout and back condition in the Summer and Fall of 2011. For example, chiropractor records for the relevant period reflected only episodic treatment, and stated that Brown engaged in strenuous activity, reportedly "splitting wood" as late as February of 2012. (Tr. 276—92, and 282.) Contemporaneous medical records from Brown's primary care physician also failed to document any severe spinal conditions. Instead, these medical records indicated that Brown did not seek any medical care between June 13, 2011 and January 2012. (Tr. 375-76.) In the Spring of 2011 when Brown sought medical care, that care was for routine treatment of an earache, sinus infection, an episode of gout, and chest pain. However, these medical records also revealed that Brown had not sought medical care for any conditions for at least three years between 2008 and 2011 prior to these routine medical appointments in the Spring of 2011. (Tr. 375-92.)

It was against the backdrop of this sparse medical record that the ALJ conducted hearings concerning Brown's disability application in March and July of 2015. (Tr. 24-57.) At these hearings Brown testified describing his level of physical activity in 2011 in terms that were inconsistent with a claim of total disability. Thus, Brown stated that he could "still mow my yard all in one shot;"

perform "some weed whacking;" (Tr. 32); and was "able to walk my grandsons up over the hill", (Tr. 33), walks that Brown undertook "without much of a problem" even though these walks took "probably 30 minutes."(Id.)

On July 17, 2015, the ALJ issued a decision denying Brown's application for benefits. (Tr. 13-19.) In this decision, the ALJ first noted that Brown's alleged date of onset of disability was July 8, 2011, (Tr. 13), and found that Brown's date last insured was December 31, 2011. (Tr. 15.) Having determined that Brown's period of benefit eligibility was limited to this six month time frame in the latter half of 2011, at Step 2 of this sequential analysis the ALJ found that Brown had the following medically determinable impairments: cervical and lumbar spine disorders and gout. (Tr. 15.) The ALJ concluded at Step 2, however, that none of these medically determinable conditions significantly limited Brown's ability to perform basic work related activities for twelve months and, therefore, he did not suffer from any severe impairments during the relevant time period, July through December 2011. (Tr. 16.)

In reaching this conclusion the ALJ specifically relied upon Brown's sworn statements, observing that Brown had:

> specifically noted that, in 2011, he was able to mow and trim his entire lawn without stopping, but could not stand for more than fifteen minutes at a time and could only walk with his grandchildren "up over the hill," an approximately thirty minute walk . The claimant did not

report or allege Gout as part of his disability or note any significant symptoms or functional limitations limitations secondary this disorder.

(Tr. 17.)

The ALJ also found that the existing treatment records provided by Brown did not support this claim, stating that:

> Chiropractic treatment records from August 2008 through the date last insured document only rare, intermittent treatment for low back pain, neck pain, and headache, with subjective improvement noted and continued objective progress with care despite the fact that the claimant was treated only four times relevant to the period at issue (Exhibits 3F and 9F). Episodes of evaluation by the claimant's primary care provider relevant to the period at issue do not document any lumbar or cervical complaints and occasionally document total denial of any muscle or joint dysfunction with no clear objective examination abnormalities or prescribed treatment suggestive of severe lumbar or cervical conditions.

(Tr. 18.) Having made these findings, the ALJ concluded at Step 2 of this sequential analysis that Brown had failed to establish that he suffered from severe medically determinable conditions, and denied this claim. (Tr. 19.) Given these findings, the ALJ did not proceed further in the sequential analysis prescribed by Social Security regulations.

This appeal then ensued. (Doc. 1.) On appeal, Brown adopts an odd posture. Even though the ALJ resolved this case at Step 2, and did not indulge in further analysis of this particular claim, Brown's appeal does not challenge this Step 2

determination. Instead, Brown argues matters not decided by the ALJ, contending that he should prevail at Steps 3 and 5 of this analytical process. By failing to argue the legal question presented in this case, and instead arguing matters not decided by the ALJ, Brown's approach to this appeal hobbles our analysis of his claims. Nonetheless, upon a consideration of the parties' briefs, and for the reasons set forth below, under the deferential standard of review which applies to Social Security appeals, we conclude that substantial evidence supports the findings of the ALJ.

## III.    Discussion

### A.    Substantial Evidence Standard of Review

In this case, Brown's claims fail on their merits when viewed under the appropriate standard of review. Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.

§§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying a plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's

11

decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic legal requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The sole legal issue presented in this case involves an assessment of an ALJ's Step 2 determination in a Social security disability case, since the ALJ's decision in this matter rested entirely upon a determination that Brown had failed

to meet his burden of proof and persuasion at Step 2 of this analytical process.

With respect to this legal issue, it is well-settled that:

> At step two of the sequential analysis, an individual seeking benefits under the Act bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is "severe" when it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.' " <u>Santise v. Schweiker</u>, 676 F.2d 925, 927 (3d Cir.1982) (*quoting* 20 C.F.R. § 404.1520(b)). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b)(1). An impairment is not severe if it does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a). The Third Circuit Court of Appeals has stated that the burden placed on an applicant at step two is not an exacting one. <u>See McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir.2004). An applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." <u>Id</u>. *(citing* SSR 85–28, 1985 WL 56856, at 3). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 547 (3rd Cir.2003). "Due to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." <u>McCrea</u>, 370 F.3d at 360. The Third Circuit does not, however, suggest that a district court should apply a more stringent standard of review in these cases. <u>Id.</u> "The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." <u>See id.</u> at 360–61 (citations omitted).

<u>Alvarado v. Colvin</u>, 147 F. Supp. 3d 297, 310–11 (E.D. Pa. 2015).

**B.    The Commissioner's Decision in This Case Should be Affirmed**

Judged against this deferential standard of review, we find that the Commissioner's decision in this matter should be affirmed for at least three reasons.

First, we are constrained to observe that the sole legal issue in this case, the ALJ's treatment of Brown's claim at Step 2 of the sequential analysis prescribed in Social Security appeals, is not challenged, disputed or even discussed by the plaintiff in his brief on appeal. This is a material shortcoming since: "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 192 (3d Cir. 2005) quoting  United States v. Pelullo, 399 F.3d 197, 222 (3d Cir.2005). This settled legal tenet applies to Social Security appeals where it is frequently held that: "Arguments not raised in an appellant's opening brief are deemed waived." Wilson v. Colvin, 218 F. Supp. 3d 439, 452 (E.D. Pa. 2016). See e.g., Cassell v. The Soc. Sec. ADM., 677 F. App'x 98, 99 (3d Cir. 2017); Harris v. Comm'r Soc. Sec., 573 F. App'x 148, 150 n.1 (3d Cir. 2014). Therefore, Brown's failure to argue this issue on appeal—the sole legal issue in this appeal—constitutes a waiver of that claim.

Second, any challenge to the merits of the ALJ's Step 2 analysis fails. On this score, we find that substantial evidence supported the decision by the ALJ that James Brown's disability claim failed at Step 2 to establish that the plaintiff suffered from severe impairments during the narrow six month window of eligibility that existed in this case between July and December of 2011. While we acknowledge that a claimant's burden at Step 2 is not an exacting one, with respect to this question we are also mindful of the fact that our review of the ALJ's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" Pierce v. Underwood, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). Guided by this deferential standard of review, we also recognize that, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quotation omitted). Therefore, the

ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.

Viewed under these legal benchmarks, we find that substantial evidence supported the decision rendered by the ALJ in this case. Indeed, on this score the most compelling witness undermining this claim during the relevant time frame was Brown himself who testified that in 2011 he could "still mow my yard all in one shot" and perform "some weed whacking." (Tr. 32.) Brown also stated under oath at this time that in 2011 he was "able to walk my grandsons up over the hill", (Tr. 33), walks that Brown undertook "without much of a problem" and walks that he estimated took "probably 30 minutes."(Id.) Thus, Brown described himself as physically active and largely able-bodied in 2011, the relevant time period for this disability determination. Further, in work activity and disability reports which Brown submitted to Social Security the plaintiff made it clear that the actual onset of his disabling back pain occurred years after his date late insured in December 2011. Further, Brown and his wife both reported that these conditions became disabling in September of 2013, long after his Social Security eligibility had

expired, (Tr. 178-79), and indicated that he had not even begun to regularly seek treatment for these conditions until 2012. (Tr. 172-185.)   Moreover, the sporadic medical records that Brown produced also provided scant support for Brown's claims that he was wholly disabled due to this gout and back condition in the Summer and Fall of 2011, and actually contradicted that claim. For example, chiropractor records for the relevant period reflected only episodic treatment, and stated that Brown engaged in strenuous activity, reportedly "splitting wood" as late as February of 2012. (Tr. 276—92, and 282.) Contemporaneous medical records from Brown's primary care physician also failed to document any severe spinal conditions. Instead, these medical records indicated that Brown did not seek any medical care between June 13, 2011 and January 2012, the relevant time period in this case. (Tr. 375-76.)  Recognizing that "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole," Alvarado v. Colvin, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015), we find that Brown's own statements regarding his physical activities, which included lawn maintenance, splitting logs, and taking extended walks, coupled with the medical records in this case which did not reveal severe impairing conditions during the Summer and Fall of 2011,

constitute substantial evidence supporting the ALJ's Step 2 determination in this case. Therefore this determination should not be disturbed on appeal.

Finally, we note that the issues raised by Brown on appeal, while not addressed by the ALJ, appear to objectively lack merit. For example, Brown's Step 3 argument warrants only brief consideration. Step 3 arguments by Social Security claimants must meet exacting legal standards. At Step 3 of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth by the Social Security regulations, and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se*, and is awarded benefits. 20 C.F.R. §416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An

impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

Here, Brown argues that the ALJ erred by failing to recognize that he met all of the criteria for disability under Listing 1.04, which relates to spinal disease and impairment. To meet Listing 1.04C, a plaintiff must produce evidence during the relevant period of (1) a spine disorder "resulting in compromise of a nerve root (including the cauda equine) or the spinal cord," with (2) "[l]umbar spinal stenosis resulting in pseudoclaudication," (a) "established by findings on appropriate medically acceptable imaging," (b) "manifested by chronic nonradicular pain and weakness," and (c) "resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04; see also Dorkoski v. Colvin, No. 3:14-CV-1198, 2015 WL 4409616, at *19-20 (M.D. Pa. July 16, 2015) (rejecting 1.04C argument where the diagnostic studies did not establish "a definite compromise of a nerve root or the spinal cord" and the "largely unremarkable" physical exams showed intact muscle strength, a normal gait, negative straight leg raising, and intact sensation). In the instant case Brown plainly has not met this burden of proof and persuasion justifying a favorable outcome at Step 3 since he has testified that in 2011 he was "able to walk my grandsons up over the hill", (Tr. 33), walks that Brown undertook "without much of a problem" and walks that he

estimated took "probably 30 minutes."(Id.)  In short, Brown's sworn testimony contradicts any claim that he was unable to ambulate effectively in 2011, and defeats any claims by Brown that he was entitled to a favorable ruling at Step 3 of this analytical process.

Likewise, in this setting where the evidence reveals that during the relevant time frame Brown reported that he engaged in strenuous lawn maintenance, split logs, and took extended walks with his children, it cannot be said that Brown has shown that he was limited to sedentary work and was therefore entitled to a judgment in his favor as a matter of law at Step 5 under the Commissioner's Medical Vocational Rules. Simply put, Brown cannot argue that he is entitled to a finding as a matter of law that he was limited to sedentary work in 2011 when the medical records reveal that he was splitting logs in February of 2012, and indulging in strenuous lawn maintenance in 2011. This argument, like Brown's Step 3 claim, fails in the face of the fact that substantial evidence supported a finding that Brown's impairments were not severe in 2011, the relevant time frame for this appeal.

In sum, the ALJ's assessment of the evidence in this case fully complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Brown can demand in a disability

proceeding. Accordingly, under the deferential standard of review which applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

So ordered, this 27th day of December, 2017.

  _s/Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge